### LEAHY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 28, 1906.)

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SEWERS—CONTRACT.

A proposal for the construction of a sewer system directed that the prices bid should include the work necessary for the "proper protection of the work from water," as well as the cost of furnishing and operating all pumps required to keep the work entirely free from water. Plaintiff was the successful bidder for the trunk sewer, and the contract provided that plaintiff should provide "for the flow of sewers, drains, and water courses" interrupted during the progress of the work, and that the commissioners should have the right to connect any sewer, etc., with the sewer provided for; that no extra allowance should be made to the contractor on account thereof; and that he at his own expense should pump out or otherwise remove any water accumulating in the trench, and should do all drainage rendered necessary by the character of the work. *Held*, that plaintiff was not entitled to recover damages caused by water which flowed in or upon his work from branch or subsidiary sewers which were constructed prior to the completion of plaintiff's work.

Action by Michael J. Leahy against the city of New York. A judgment was rendered dismissing the complaint, and plaintiff's motion for a new trial was ordered to be heard in the first instance at the Appellate Division. Denied.

Argued before PATTERSON, INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

L. Laflin Kellogg, for the motion.
Terence Farley, opposed.

McLAUGHLIN, J. The city of New York, for the purpose of sewering its Twenty-Third and Twenty-Fourth Wards, or a portion thereof, provided for the construction of a system of sewers, to consist of a main branch and several lateral sewers emptying into it, all of which were delineated on a map or plan. After the map had been filed the city advertised for bids for the construction of the main sewer, extending in the West Farms Road from Edgewater Road to Boston Road, and in Boston Road from West Farms Road to East 182d street, and in East 178th street from Boston Road to Southern Boulevard, and in Southern Boulevard from East 175th street to Pelham avenue; and in the advertisement attention was called to the map or plan, specification, and location of the work, and notice given that "bidders must satisfy themselves by personal examination of the location of the proposed work" before bidding, and that the prices bid for the construction would include the work necessary for the "proper protection of the work from water," as well as "the cost of furnishing and operating all pumps

required to keep the work entirely free from water." Attention was also called to the fact that other contracts for the perfection of the system contemplated might be entered into before or subsequent to the execution of the contract for which bids were invited. Fortified with this information, the plaintiff made a bid, which was subsequently accepted, for the construction of the main sewer; he having, according to his own testimony, previously examined the map and plan and acquainted himself with the work contemplated. The contract which he entered into was dated the 21st of June, 1897, and provided, among other things, that he would commence the work on such day and at such place or places as the commissioner, by his engineer, might designate, and that he would carry on such work "so as to complete the same in accordance with this agreement on or before the expiration of 400 days next thereafter, Sundays, holidays, and days on which the prosecution of the whole of the work in accordance with the provisions of this agreement is suspended, to be excepted," and also providing for certain other exceptions, in which he would become entitled to an extension of time. The contract further provided that the plaintiff should provide "for the flow of sewers, drains, and water courses interrupted during the progress of the work," and that the commissioner should have the right "to connect any sewer or sewers, drain or drains, with the sewer herein described," and "no extra allowance will be made to the said contractor on account thereof"; that the plaintiff would "at his own expense pump out or otherwise remove any water which may be found or shall accumulate in the trench, * * * and shall form all dams or other work necessary for keeping the excavation clear of water during the progress of the work"; and to that end he would do "all pumping, bailing, and drainage rendered necessary by the character of the work."

The plaintiff fully performed his contract and was paid therefor upwards of $300,000. Subsequently he commenced this action to recover damages, amounting to between $29,000 and $30,000, alleged to have been sustained by him by reason of the act of the city in permitting water to flow upon his work from the lateral sewers, which were constructed prior to the completion of his contract. The answer put in issue the material allegations of the complaint upon which the right to recover was predicated. At the trial it appeared that, subsequent to the execution of the plaintiff's contract, the city entered into other contracts for the construction of six lateral sewers; that they were constructed prior to the completion of plaintiff's work; and that water did in fact flow therefrom upon plaintiff's work, or percolate through the adjacent soil, causing him damage. The trial court, however, at the conclusion of plaintiff's case, concluded this did not entitle him to recover under the terms of his contract, and dismissed the complaint, directing the exceptions taken thereto to be heard in the first instance at the Appellate Division.

I am of the opinion the complaint was properly dismissed. The plaintiff's work was but a part of the work adopted by the city for the construction of a system of sewers, and that other contracts were to be let was clearly contemplated, and provision made therefor in case such other contracts should be completed prior to the work which plaintiff contracted to do and perform. The sewer which plaintiff was to con

struct was the trunk line. The other sewers were merely branches, or subsidiary to, and must of necessity flow into, it. They could not flow elsewhere, and this the plaintiff knew, and for that reason the contract specifically provided that the city was not to be liable for damages resulting to the plaintiff from the water which flowed in or upon the work which he contracted to perform. The plaintiff had notice that contracts for the construction of the lateral sewers were to be made, and that connections from them, when made, would be with the sewer which he agreed to build. He knew that water would flow through such sewers when constructed. He also knew that, if water did flow through such sewers, he must take care of it at his own expense, for which reason he specifically contracted to take care of such water by providing that he would keep the trenches free from water by making dams and doing the necessary pumping. The case, in this respect, cannot be distinguished from Kelly v. City of New York, 106 App. Div. 576, 94 N. Y. Supp. 872, where this court held that by the express terms of the contract then under consideration the city was not liable for damages resulting from water which flowed into a trench which plaintiff contracted to build.

It seems to me clear the acts of which plaintiff now complains, and which he alleges caused him damage, were not due to any act of omission or commission on the part of the city, but were the direct consequence of the performance of his work and for which he had specifically stipulated. In addition to the foregoing, it would seem, if the plaintiff had performed his contract within the stipulated time, his work would have been completed before the construction of the lateral sewers, in which event no damage would have been sustained by him.

I am of the opinion, therefore, that the exceptions are not well taken, for which reason the same should be overruled, and the motion for a new trial denied, with costs. All concur.